```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION

WESLEY SCOTT,                    )
                                 )
          Plaintiff,             )
                                 )
     v.                          )    No.  07 C 4287
                                 )
CHICAGO POLICE OFFICER           )
SERGEANT WALLACE, STAR #7343,    )
et al.,                          )
                                 )
          Defendants.            )
```

                      MEMORANDUM OPINION AND ORDER

In compliance with this Court's brief February 9, 2012 memorandum order, counsel for plaintiff Wesley Scott ("Scott") has filed responses to the 15 motions in limine (respectively cited "Motion -- (Dkt. --)") that defense counsel had filed after the entry of the revised final pretrial order that has set the ground rules for trial of the case. This memorandum opinion and order will address the numerous motions.

Two of the motions are unopposed and are granted as a matter of course. Those comprise Motion 1 (Dkt. 103), which requests the exclusion of witnesses pursuant to Fed. R. Evid. 615, and Motion 10 (Dkt. 108), which seeks dismissal of any claims against unknown officers. On, then, to the motions that require more discussion.

Motion 2 (Dkt. 104) asks for restraints against trial publicity. But as Scott's counsel points out, this District Court has spelled out some specifically permissible areas of

lawyer comment in its LR 83.53.6(c)--and indeed, that laundry list really supplements the First Amendment rights of lawyers as more generally stated in LR 83.53.6(a).[1] In sum, Motion 2 is denied, with LR 33.53.6 to set the standards instead.

Motion 3 (Dkt. 105) seeks to keep from the jury any knowledge (1) that the defendant police officers may be indemnified by the City of Chicago for any compensatory damages award and (2) that the City is paying for the defense of the case. Scott's counsel responds by accepting that constraint so long as defendants do not argue that they are paying for their own damages or defense.

But neither side has addressed the more subtle nuances posed by this disclosure issue. To be sure, it is important that a jury that votes in favor of a plaintiff and against an officer in a 42 U.S.C. §1983 action must not be encouraged to inflate a compensatory damages award because the jury learns that the award will come out of a deeper pocket than that possessed by the officer[2]--but on the other hand, a jury aware of the level of

---

[1] This Court has more than a casual familiarity with that LR: As the Committee Comment to LR 83.53.6 states, it is based in part on the decision in Chicago Council of Lawyers v. Bauer, 522 F.2d 242 (7th Cir. 1975), a case in which this Court (then a practicing lawyer) succeeded in having held unconstitutional on First Amendment grounds the then-existing (and more restrictive) District Court rule on lawyer comments.

[2] On the flip side, in these bleak days for Chicago's finances any information as to indemnification might prompt a lowball verdict.

2

police compensation might be inclined to cut back on a reasonable damages figure if it believes mistakenly that the officer will pay the compensatory damages himself or herself. There is also the consideration that a jury should be informed that any punitive damages award must be borne by an individual defendant personally, and an instruction along those lines can convey to a sharp juror the implication that the City will be on the hook for compensatory damages.

In sum, the ultimate handling of the issue ought to await resolution until the time of trial. At that point the nature of the evidence may provide better guidance as to the most equitable handling of the matter. In the meantime Motion 3 is granted, subject to its being revisited during the trial.

Motion 4 (Dkt. 106) asks that Scott's counsel should not argue that the jury should "send a message" to the City or the defendant officers by its verdict, while Scott's counsel asks that the motion be denied because of the absence of supportive authority and because the "motion is too vague to be administered." But the thrust of the motion is plain: to head off an impermissible inflation of compensatory damages through an appeal to passion rather than reason.

That said, however, it is entirely permissible to argue to a jury that its verdict should teach a defendant officer (and even, perhaps, other officers who may learn of the verdict) that he or

3

she should not be permitted to escape responsibility for an abuse of the powers that are given to law enforcement personnel. And where potential punitive damages are at issue, the whole idea is to "send a message" to the offending officer through an appropriate instruction. Accordingly Motion 4 is denied as presented, subject to possible review in the context of trial.

Motion 5 (Dkt. 107) seeks to bar testimony or evidence as to an alleged "code of silence," though defense counsel acknowledges that Scott's lawyer has never raised that prospect during the course of discovery. Again Scott's counsel says that he "has no idea what Defendants are referring to" and that the "motion is too vague to be administered and appears to be based on a concept in the minds of Defendants not Plaintiffs." Although the motion as posed will be granted, Scott's counsel is free to make a related argument against the credibility of officer witnesses (on that score it will be recalled that Seventh Circuit Civil Jury Instruction 1.13, prepared by the Committee on Pattern Civil Jury Instructions, refers to "any interest, bias or prejudice the witness may have" as a permissible consideration bearing on credibility).

Motion 6 (Dkt. 113) would bar any testimony or evidence relating to Counts II and III of Scott's Third Amended Complaint, both those counts having been dismissed by this Court's December 29, 2008 oral ruling. But that motion ignores the fact

4

that this Court held in part that "the allegations relating to the incident in 2005 remain" (Dkt. 42). Although no liability may be assessed for that earlier (April 4, 2005) incident, evidence regarding it may be considered by the jury as bearing on the relevant elements regarding the November 3, 2006 incident sued upon. Hence Motion 6 is denied.

Motion 7 (Dkt. 114) is labeled "to bar testimony or evidence relating to lay opinions and previously undisclosed opinions." So framed, it is obviously overbroad--for example, lay testimony under Fed. R. Evid. 701 is perfectly permissible as to observations of emotional distress on the part of a plaintiff (see, e.g., Bruso v. United Airlines, Inc., 239 F.3d 848, 857 (7th Cir. 2001)), in addition to which the response by Scott's counsel (Dkt. 128) cites a host of other cases that allow lay testimony in related areas. Motion 7 is denied as well.

Motion 8 (Dkt. 115) asks that what is called "unrelated conduct of Defendant Officers" be kept from the jury. In response Scott's counsel characterizes the request as "too vague" and as "requir[ing] Plaintiff to police the evidence although none was brought up in discovery." Although this Court grants Motion 8, the issue of what conduct is "unrelated" must await ultimate determination at trial.

Motion 9 (Dkt. 116) similarly asks that evidence or testimony "regarding matters unrelated to the underlying 11/3/06

incident" be barred.  "Unrelated" could perhaps be equated to "not relevant," thus foreclosing the use of such evidence via a tautological application of Fed. R. Evid. 402.  But defense counsel obviously seeks to cut a broader swath than that, so that the motion is denied for reasons previously stated.

Motion 11 (Dkt. 117) attempts to ring another change on several of the earlier-discussed motions by asking to exclude "any evidence of incidents of April 4, 2005."  As before, that subject will be for the jury to evaluate at trial--and that means the evidence will be admitted under proper instructions.  Motion 11 is denied.

Finally, Motions 12 through 15 seek to bar or dismiss any claims against four of the defendant officers--Willis Rounds (Dkt. 109), Larry Watson (Dkt. 110), Brian Berkowitz (Dkt. 111) and Norris Halsell (Dkt. 112).  Scott's deposition testimony was that those officers were present during the November 3, 2006 incident sued upon here, but he has ascribed no specific conduct to any of them.  But as the several motions acknowledge, even though mere presence at the scene cannot serve to establish a violation of constitutional rights, the failure to intervene to prevent or to halt constitutional violations by other officers may be a predicate for liability (to that end, each of the motions cites Lanigan v. Vill. of East Hazel Crest, 110 F.3d 467, 477-78 (7th Cir. 1997)).  Because that issue will be for the jury

to evaluate, all four motions are denied.

## Conclusion

In summary:

    1. Motions 1 (Dkt. 103) and 10 (Dkt. 108) are granted without objection.

    2. Motions 5 (Dkt. 107) and 8 (Dkt. 115) are also granted.

    3. Motion 3 (Dkt. 105) is granted, subject to a possible revisiting of the subject at trial.

    4. Motions 2 (Dkt. 104), 6 (Dkt. 113), 7 (Dkt. 114), 9 (Dkt. 116), 11 (Dkt. 117), 12 (Dkt. 109), 13 (Dkt. 110), 14 (Dkt. 111) and 15 (Dkt. 112) are denied.

    5. Motion 4 (Dkt. 106) is denied, subject to a possible revisiting of the subject at trial.

Because by definition all such in limine rulings on evidentiary matters (even though they are the result of studied consideration) precede the trial, defense counsel is reminded of the need to reassert the motions for ultimate confirmation of those evidentiary rulings at trial.

_____
    Milton I. Shadur
    Senior United States District Judge

Date: February 24, 2012